Arthur L. Conaty, Receiver Consolidated Mortgage and Investment Corporation
vs.
Augustus A. Greene, Henry D. Bellin, John C. Champlin and Louis Benjamin
Eq. No. 11513.

DECISION.

April 7, 1933.

WALSH, J. This is a bill brought by the Receiver of the Consolidated Mortgage and Investment Corporation, a Rhode Island corporation, seeking cancellation of 2900 shares of Common, Class A, No Par Value stock of Rhode

Island Mortgage Security Corporation, a Rhode Island corporation, and 4517 shares of Common, Class A, No Par Value stock of Consolidated Mortgage and Investment Corporation above mentioned, on the ground that said shares were issued without consideration.

The evidence showed that Augustus A. Greene, A. Henry Klein, a brother-in-law of Henry D. Bellin, William H. Bowker and Henry D. Bellin, formed the Rhode Island Mortgage Security Corporation in April, 1928; that they elected themselves Directors of said corporation on April 23, 1928; that, acting as such directors, they voted to allow themselves to subscribe to Classes A and B of the stock of said corporation, such subscription to be for units of one share of Class B, par value $1 per share and one share of Class A, no par value for the sum of $1 per unit; that on this basis Greene subscribed for 1000 shares Class A and 1000 shares Class B for which he agreed to pay $1000; Klein subscribed for 3000 shares Class A and 3000 shares Class B for which he agreed to pay $3000; Bowker subscribed for 500 shares Class A and 500 shares Class B for which he agreed to pay $500; Bellin subscribed for 1500 shares Class A and 1500 shares Class B for which he agreed to pay $1500. Thus, the four founders of the corporation voted themselves 12,000 shares of the voting stock of the corporation for the sum of $6,000, the par value of Class B stock alone. It is to be noted at this point that but four directors were present when this action was taken and that the by-laws of the corporation require five directors for a quorum to do business.

Later on, the Rhode Island Mortgage and Security Corporation voted to merge with the Consolidated Mortgage and Investment Corporation on the basis of an exchange of share for share. In the meantime Bellin had taken over 400 shares of the Bowker allotment in his own name and 2000 shares of the Klein allotment in the name of John C. Champlin and the remainder of the Bowker and Klein interests found their way by surrender to the treasury of the Rhode Island Mortgage Security Corporation. Bellin and Greene did not exchange all their stock in the Rhode Island Mortgage Security Corporation for like stock in the Consolidated.

It is clear from all the testimony that the issue of Class A no par value stock of the Rhode Island Mortgage Security Corporation to Greene, Klein, Bowker and Bellin, including the bonuses of 100 shares each to each person named, in his capacity as director, was without consideration. After the merger with Consolidated, Bellin secured 2290 shares of Consolidated in the name of John C. Champlin by transfer of Rhode Island Mortgage Security stock, and when Consolidated met financial difficulties sought to sell the controlling interest in Consolidated to Benjamin April 12, 1931. To assure transfer of control, Bellin caused to be issued a certificate No. 80 of Consolidated Mortgage and Investment Corporation to Louis Benjamin for 2227 shares of Consolidated, the consideration alleged for the same being Benjamin's promise to procure financial aid for the corporation.

The facts about the transfer of Consolidated to Benjamin are clear. Stone, a brother-in-law of Benjamin, and a man with apparently sound financial backing at the time, became interested in obtaining control of Consolidated. Bellin et al. had conferences with Stone and his attorney. As a result, Stone sent a certified public accountant to Providence to examine the books of both Rhode Island Mortgage Security Corporation and Consolidated Mortgage and Investment Corporation and a thorough examination was made. The by-laws, minutes of directors' and stockholders' meetings and all books and papers relating to issue and trans-

fer of stock were submitted and examined. Stone received a full report of the organization, management and condition of both corporations. With this knowledge, Stone gave his check for $7500 to Benjamin, his brother-in-law, to purchase a controlling interest in Consolidated. From the proceeds of this check, Consolidated received about $1500, the balance being paid by Bellin et al. for claims not properly chargeable to either corporation. Upon these facts, we cannot credit the testimony of Benjamin when he says he was a bona fide purchaser without notice of "street certificates". He must have had notice of the equities of those holders of other stock in these corporations who had bought their shares at $50 per share in good faith and who were deprived of any voice in the affairs of either corporation by the acts of the promoters and directors who voted themselves control of the voting stock in each corporation. The price paid by Benjamin is so small in comparison with what the books show to have been paid in by bona fide shareholders that any reasonable person would have looked upon the transaction with suspicion.

The consideration alleged for the transfer of the 2227 shares of Consolidated to Benjamin is not a good consideration. His promise to get financial assistance for the corporation cannot avail to deprive bona fide stockholders of their share of the assets in the event of receivership. Therefore, we find from all the evidence that the shares of these respective corporations in the hands of the respondents named were issued without consideration to said respondents and that the same should be delivered to the Receiver for cancellation.

For complainant: Arthur L. Conaty, Isadore Horenstein.

For respondents: Peter W. McKiernan, Robert Brown, Frank H. Bellin.